**Majid DANESH, Plaintiff,**

v.

**RITE AID CORPORATION, et al., Defendant.**

**No. Civ.A. 97–1428 (HHK).**

United States District Court, District of Columbia.

Jan. 25, 1999.

Kenneth E. Labowitz, Dingman, Labowitz, P.C., Alexandria, VA, for plaintiff.

Thomas M. Wood, IV, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for defendant.

## ORDER AND JUDGMENT

KENNEDY, District Judge.

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 25th day of January 1999 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the plaintiff.

## MEMORANDUM OPINION

Plaintiff, Majid Danesh, a pharmacist, has brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("the Act" or "Fair Labor Standards Act"), for overtime pay he allegedly earned while employed by defendants Rite Aid of Washington, D.C., Inc. and Rite Aid of Maryland, Inc. (collectively "Rite Aid"). Before the court is plaintiff's motion for summary judgment. Upon consideration of the motion, the responses thereto,[1] and the entire record of this case, the court concludes that plaintiff is entitled to summary judgment.

### I. FACTUAL BACKGROUND

Majid Danesh was employed as a pharmacist by Rite Aid from August 1993 until August 1996. Danesh contends that he worked certain hours for which he was not paid, and that he is entitled to one and one-half times his regular pay for the overtime hours he worked and liquidated damages.

Danesh's employment contract, a form agreement dated August 5, 1993, specifies that in consideration of Danesh's employment with Rite Aid Corporation, "[Danesh's] salary will be $52,000 per year, for all hours worked to be paid on an exempt basis," and that the salary is to be paid as "$2000.00 bi-weekly per 80 hours worked (base = 80 hours)," whereby "[a]ny hours worked in excess of base hours [are] to be

paid at a rate determined by dividing biweekly salary by base hours." Pl.s Exh. 1. Danesh received raises in August 1994 (to $2,060 biweekly) and August 1995 (to $2,132.10 biweekly).

Danesh was paid biweekly from the accounts of Rite Aid Corporation. Danesh alleges that his paychecks were subject to deductions for tardiness in reporting to work on three occasions. In support of this contention, Danesh offers copies of paystubs for the relevant biweekly periods, Pl.'s Exh. 6, which indicate the following: First, Danesh's December 21, 1995 paycheck was based on a gross salary of $1,758.90, allegedly reflecting a deduction of two hours for tardiness on December 12, 1995. Second, Danesh's February 1, 1996 paycheck was based on a gross salary of $2,545.19, allegedly reflecting a deduction of one-half hour for tardiness on January 22, 1996. Finally, Danesh's March 14, 1996 paycheck was based on a gross salary of $1,852.17, allegedly reflecting a deduction of two and one-half hours for tardiness on March 7, 1996. This last deduction also appears on Rite Aid's handwritten payroll history for Danesh in a notation that reads "2.5 hours late on 3/7/96."

In response, Rite Aid alleges that there were pay periods for which Danesh was paid for 80 hours or more despite working less than 80 hours, and other pay periods for which "Rite Aid's records show" that Danesh worked less than he now claims.

### II. STANDARD OF REVIEW

A motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its

---

1. Due to an oversight by defendants' counsel, Rite Aid of Washington, D.C., Inc. was omitted from the original Opposition to Plaintiff's Motion for Summary Judgment filed on March 31, 1998. The defendants have now joined in one and the same opposition to Danesh's motion for summary judgment. See Def. Rite Aid of Washington D.C., Inc.'s Opp. ¶ 5.

motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322 n. 3, 106 S.Ct. at 2552 n. 3. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

### A. Danesh's Status

The Fair Labor Standards Act provides that employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate equal to one and one-half times their regular pay. 29 U.S.C. § 207(a)(1). However, employees "employed in a bona fide executive, administrative, or professional capacity" are exempted from this overtime compensation provision. 29 U.S.C. § 213(a)(1).

■ The assertion that an employee is exempt from the overtime requirements is an affirmative defense to a suit under the Act, *Roney v. United States,* 790 F.Supp. 23, 26 (D.D.C.1992). The defendant,

therefore, has the burden of proving such exemption. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Moreover, exemptions from the Act are narrowly construed against the employer "in order to further Congress's goal of affording broad federal government protection." *D'Camera v. District of Columbia,* 693 F.Supp. 1208, 1210 (D.D.C.1988) (citing *Mitchell v. Lublin, McGaughy & Assoc.,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959)).

In relevant part, federal regulations define an exempt "professional" as an employee

> whose primary duty consists of the performance of . . . [w]ork requiring knowledge of an advance [sic] type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study . . . and . . . who is compensated for services on a salary or fee basis . . .

29 C.F.R. § 541.3.

■ An employee is compensated on a salary basis within the meaning of 29 C.F.R. § 541.3 if he "must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.118. Despite this requirement, the payment of hourly overtime in addition to base pay is consistent with compensation on a salary basis. *Hilbert v. District of Columbia,* 23 F.3d 429, 432–33 (D.C.Cir. 1994). Salaried status is also unaffected by deductions in pay made when an employee is absent for a day or more for personal reasons, or for sickness or disability, if the employer is covered by a disability plan. *Id.* Deductions in pay for absences shorter than a full day, however, are "inconsistent with the Act's conception of a salaried employee." *D'Camera,* 693 F.Supp. at 1212.

In *D'Camera,* this court considered whether District of Columbia police sergeants were compensated "on a salary basis" within the meaning of 29 C.F.R.

§ 541.118. The court found that plaintiffs had demonstrated that "in certain circumstances sergeants are subject to pay reductions on an hourly basis for absences from work of less than a day." 693 F.Supp. at 1213. Regardless of "the frequency with which a sergeant's pay is so reduced," the court found that "[t]here can be no doubt that a District sergeant's pay is 'subject to deduction because of the ... quantity of the work performed.'" *Id.* The court held that "in order to claim exempt status under the FLSA, an employer must meet every aspect of the definition for an exempt employee." *Id.* The defendant had failed to prove that its sergeants were paid on a salary basis, and "[f]or this reason alone," was ineligible for the bona fide administrative employee exemption. *Id.*

■ In the instant case, Danesh has offered evidence showing that he was subject to pay reductions on an hourly basis for absences from work of less than a day. While the handwritten notations on Danesh's paystubs might have slight probative value in isolation, they are highly persuasive when viewed in context.

Specifically, Danesh's February 1, 1996, paystub reflects a gross salary of $2,545.19, including $2,132.10 in regular salary and $413.09 in overtime salary. The $413.09 in overtime salary is equal to 15.5/80 of $2,132.10, a sum that suggests that Danesh was paid overtime at his regular hourly rate, worked two full days of overtime, and was docked one-half hour's pay for tardiness on January 22, 1996. Even more persuasive is Danesh's March 14, 1996 paystub, showing a gross salary of $1,852.17. This sum is equal to 69.5/80 of $2,132.10, consistent with Danesh having worked nine days during that period, with a deduction of two and one-half hours for tardiness on March 7, 1996. This last deduction also appears on Rite Aid's handwritten payroll history for Danesh as the notation "2.5 hours late on 3/7/96."

Rite Aid's papers dispute Danesh's notations by stating that "Rite Aid's records show" that Danesh worked fewer hours than he claimed; however, Rite Aid's only supporting exhibits with respect to this issue are photocopies of the same annotated paystubs submitted by Danesh. *Compare* Def.'s Exh. 10–13 *with* Pl.'s Exh. 5. Moreover, even if the notations on the paystubs are merely assertions by Danesh as to his time worked, they are consistent with the actual gross salary amounts that appear on the faces of the paystubs. The paystubs therefore tend to demonstrate the absence of a genuine issue of material fact concerning whether Danesh's pay was subject to hourly reductions for absences from work of less than a day.

Rite Aid also offers the theories that Danesh was simply being paid "a fixed amount plus additional hourly wages for extra hours worked," Def.'s Opp.Mem. at 9, or that Danesh "voluntarily took off a day or more of work," *id.* at 10; however, neither of these alternative explanations is plausible. It is undisputed that Danesh worked fewer than 80 hours and, therefore, did not work "extra hours," during the pay periods ending December 16, 1995 and March 9, 1996. Moreover, Rite Aid has offered no account of why Danesh's "voluntarily taking off a day or more of work" would result in the appearance of odd half-hours in his biweekly totals. The court finds that Rite Aid's unsupported theories are not significantly probative and do not raise a genuine issue of material fact concerning whether Danesh's pay was subject to docking for absences of less than a day. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 (nonmoving party "may not rest upon mere allegations or denials of [the movant's] pleading").

Finally, Rite Aid contends that a recent Supreme Court decision, *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), stands for the proposition that "*at least normally,* a single or infrequent improper deduction is insufficient to defeat exempt status." Def.'s Opp.Mem. at 12 (emphasis added). This misstates the Court's treatment of an exceptional case as

a general rule. In *Auer,* police sergeants challenged the Eighth Circuit's conclusion that "a 'one-time incident' in which a disciplinary deduction is taken under 'unusual circumstances' does not defeat the salaried status of employees." 117 S.Ct. at 910–11 (quoting *Auer v. Robbins,* 65 F.3d 702, 711 (8th Cir.1995)). The Court deferred to the Secretary of Labor's interpretation of the salary-basis test that denied exempt status when "there is an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." 117 S.Ct. at 911. Applying this test, the Court found that a "one-time deduction in a sergeant's pay, under unusual circumstances," did not establish a significant likelihood of such deductions. *See also Carpenter v. City & County of Denver, Colorado,* 115 F.3d 765, 767 (10th Cir.1997) ("the [Auer] Court specifically recognized that such one time deductions *under unusual circumstances* will not oust exempt status") (emphasis added).

Rite Aid has offered no evidence to show that the deductions in Danesh's pay occurred under unusual circumstances that negate an actual practice of making such deductions. To the contrary, the amount of Danesh's salary was determined by a computer program. See Def.'s Opp.Mem. at 4 (referring to "computer pay records" in Def.'s Exh. 5). Such a deterministic algorithm produces the same functional relationship between hours and salary every time it is run. Where, as here, the calculation of employee compensation has been delegated to a computer system, and no computer error is alleged, a finding of at least one hourly deduction for missed work is sufficient to bespeak both an actual practice and a policy of such deductions.[2]

In sum, Rite Aid's pleadings are inconsistent with the evidence and caselaw cited therein, and fail to raise a genuine issue of material fact as to Danesh's status.

## B. Window of Correction

Rite Aid contends that, under the "window of correction" rule, it is entitled to restore Danesh's status as a salaried employee by correcting any deductions made in violation of 29 C.F.R. § 541.118(a). The pertinent regulations provide:

> where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6). Here, "inadverten[ce]" and "made for reasons other than lack of work" are alternative grounds permitting corrective action. *Auer,* 117 S.Ct. at 912.

Rite Aid does not contend that the deductions in Danesh's pay were inadvertent; instead, Rite Aid argues that any such deduction "was for lateness; it was not for lack of work." There is no evidentiary support for this assertion. To the contrary, the gross salary amounts appearing on Danesh's paystubs indicate that deductions were made at an hourly rate, according to the number of hours Danesh was tardy for work. Moreover, even though an employee's tardiness, like hours and pay, might vary from pay period to pay period, the paystubs and employment histories nowhere provide for an independent "tardiness" variable that would be necessary to calculate pay under a formula that penalized tardiness. All of the evidence tends, therefore, to show that the amounts of the deductions were based on the number of hours Danesh did not work.

---

2. Because a finding of one improper deduction is legally sufficient for the foregoing conclusions, Rite Aid is incorrect that the allegations in Danesh's reply brief of further improper deductions "completely change[ ] the character of his motion." Def.'s Motion to Strike ¶ 3, at 2. Rite Aid's motion to strike is therefore denied as moot.

## C. Damages

An employer who violates the overtime provisions of the Act is liable to the employees affected "in the amount of their unpaid ... overtime compensation ... and in an additional amount as liquidated damages." 29 U.S.C. § 216(c). An employer may avoid liquidated damages "if the employer shows that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Act." 29 U.S.C. § 260. The award of liquidation damages is within the sound discretion of the trial court. *Id.*

The "good faith" defense to liquidated damages under 29 U.S.C. § 260 requires "an affirmative showing of a genuine attempt to ascertain what the law requires, not simply on a demonstration of the absence of bad faith." *Dove v. Coupe,* 759 F.2d 167, 175–76 (D.C.Cir.1985) (citations omitted).

█ Rite Aid was responsible for knowing and satisfying the Act's requirements. *See Burnley v. Short,* 730 F.2d 136, 140 (4th Cir.1984) ("[A]n employer may not simply remain blissfully ignorant of FLSA requirements."). Despite this, Rite Aid has provided no reasoning to support the conclusory language in Danesh's employment contract stating that Danesh would be "paid on an exempt basis." Pl.'s Exh. 1. The court therefore finds that Rite Aid has failed to show that it had reasonable grounds for believing that its compensation scheme was not a violation of the Act. *See D'Camera,* 722 F.Supp. at 801 ("Such silence hardly constitutes an affirmative showing of good faith and reasonable grounds."). Accordingly, the court will award liquidated damages to Danesh.

## IV. CONCLUSION

For the foregoing reasons, Danesh's motion for summary judgment will be granted. Damages, including liquidated damages will be determined after further proceedings. An appropriate order accompanies this memorandum.